REVISED NOVEMBER 10, 2009

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

November 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-10453

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MAXIMILIANO JASSO,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

The defendant-appellant appeals his sentence, arguing that the district court erred in assigning him two additional criminal history points, pursuant to § 4A1.2(e) and (k) of the United States Sentencing Guidelines (U.S.S.G.), based on his 1995 assault conviction in Texas state court and the subsequent sentence the Texas state court issued when he violated his term of probation.

Although we acknowledge that the district court's reading of the ambiguous language in § 4A1.2(k) was not unreasonable, our review of § 4A1.2,

in its entirety, leads us to conclude that it was error to count the defendant-appellant's entire sentence issued upon his violation of probation, rather that considering only the portion of the sentence he actually served. This error resulted in the district court's assessment of the two additional criminal history points. The comprehensive analysis required to resolve the issue raised on appeal, however, precludes the conclusion that the district court's sentencing error was either clear or obvious.

Further, we conclude that the addition of these two points did not affect the defendant's substantial rights. As a result, we write principally to clarify this error–an error that prior to our defining it as such, constituted nothing more than an inconsistent ambiguity buried within one section of the Sentencing Guidelines.

I.

Maximiliano Jasso was charged in a single-count indictment with illegal reentry following removal, in violation of 18 U.S.C. § 1326(a) and (b)(2). He pled guilty to the offense without the benefit of a written plea agreement.

The Presentence Report (PSR) assigned Jasso a base offense level of eight. See U.S.S.G. § 2L1.2(a). The probation officer recommended the imposition of a sixteen-level enhancement on the ground that Jasso previously was deported following the commission of a crime of violence. See U.S.S.G. § 2L1.2(b)(1)(A)(ii). Following the application of a three-level adjustment for acceptance of responsibility, Jasso was assigned a total offense level of twenty-one. See U.S.S.G. § 3E1.1.

The district court assigned two criminal history points based upon Jasso's 1995 guilty-plea conviction in Texas state court for an aggravated assault causing serious bodily injury. The probation officer's narrative for the conviction stated that Jasso was sentenced to a ten-year term of felony

probation in October1995, but that he violated his probation in August 1999. Jasso's probation was consequently revoked in November 2005, and he was sentenced to ten years of imprisonment. After serving nearly six months of this prison term, Jasso returned to Texas state court in May 2006, at which time he was released from prison and sentenced to serve a six-year "shock probation" term.[1] As a result, he never served more than six months in prison for his probation violation.

Additionally, in calculating his criminal history points, the probation officer also applied (a) two criminal history points on the ground that Jasso committed the instant reentry offense while he was under a criminal justice sentence of probation for the aggravated assault conviction, and (b) one criminal history point because Jasso committed the instant offense less than two years after his release from imprisonment on a sentence that was counted pursuant to U.S.S.G. § 4A1.1(b). See U.S.S.G. § 4A1.1(e). Jasso was assigned a total criminal history score of five, which resulted in a criminal history category of III. This criminal history category, combined with a total offense level of twenty-one, yielded a guideline range of imprisonment of forty-six to fifty-seven months.

---

[1] The statute defining "shock probation," TEX. CODE CRIM. PRO. ART. 42.12, § 6, provides, in part:

> [T]he jurisdiction of a court in which a sentence requiring imprisonment . . . is imposed by the judge of the court shall continue for 180 days from the date the execution of the sentence actually begins. Before the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may . . . suspend further execution of the sentence and place the defendant on community supervision under the terms and conditions of this article[.]

Jasso filed no objections to the PSR.[2] At sentencing, the defendant-appellant reiterated that he had no objections to the PSR. He did make a request for a downward departure/variance based on the PSR's over-representation of his criminal history and the presence of mitigating circumstances. The district court denied Jasso's request. The court then sentenced Jasso to forty-six months of imprisonment and a two-year term of supervised release.

Jasso filed a timely notice of appeal.

## II.

This case requires this Court to decide whether the district court erred in assigning the defendant-appellant two additional criminal history points, pursuant to U.S.S.G. § 4A1.2(e) and (k), for his prior assault conviction in Texas state court, for which he received an additional term of imprisonment as a result of his violation of the original term of probation.[3] "[W]e review the

---

[2] Prior to sentencing, Jasso filed a sentencing memorandum in which he argued that he was entitled to a downward variance/departure based upon the PSR's over-representation of his criminal history. Jasso asserted that the probation officer erred in assessing five criminal history points based upon a single prior conviction; Jasso argued that "[t]he over-representation stems from the additional three points assessed . . . for committing the instant offense while under a criminal justice sentence and for committing the instant offense within two years of his release from imprisonment." Jasso also contended that he was entitled to leniency in light of the following mitigating factors: the instant offense was his first appearance in federal court, he did not comprehend the consequences of a reentry offense, the sixteen-level enhancement was based upon a remote conviction, and his reentry was motivated by his desire to work and to remain in contact with his children. Although Jasso argued in the sentencing memorandum that his criminal history score was erroneously calculated, he did not raise the specific issue that he now asserts on appeal. Thus, as discussed in greater detail below, we review his claim on appeal under our plain error standard of review. Indeed, Jasso concedes that his claim presented now on appeal is properly reviewed under plain error.

[3] Jasso also argues on appeal that the district court erred in ordering his federal sentence to run consecutively to any sentence that the Texas state court may impose with respect to a pending assault charge. He acknowledges that there is a circuit split on this issue. Cf. United States v. Quintero, 157 F.3d 1038, 1039-40 (6th Cir. 1998); with United States v. Clayton, 927 F.2d 491, 492-93 (9th Cir. 1991)). However, Jasso also concedes that his argument is foreclosed by this Court's precedent in United States v. Brown, 920 F.2d 1212, 1216-17 (5th Cir. 1991), abrogated on other grounds, United States v. Candia, 454 F.3d 468,

district court's application of the sentencing guidelines de novo." United States v. Arviso-Mata, 442 F.3d 382, 384 (5th Cir. 2006).

In the present case, however, the defendant-appellant failed to make any objection to the district court's addition of these two criminal history points at the time the court actually sentenced him. Consequently, this argument has not been raised "to such a degree that the district court ha[d] an opportunity to rule on it." Keelan v. Majesco Software, Inc., 407 F. 3d 332, 340 (5th Cir. 2005) (quotations and citation omitted). To preserve an argument for appeal, the party must "must press and not merely intimate the argument during the proceedings before the district court." Id. (quotations and citation omitted).

Because Jasso failed to preserve this assertion of error in the district court below, "this court's review is for plain error" only. United States v. Villegas, 404 F.3d 355, 258 (5th Cir. 2005). "This court finds plain error when: (1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights." Id. at 358-359 (citing United States v. Olano, 507 U.S. 725, 732-737 (1993)); see also United States v. Gonzales, 484 F.3d 712, 715 (5th Cir. 2007) ("Under plain-error review, we first inquire whether the district court's imposition of the enhancement was erroneous and, if so, whether the error was plain (i.e., clear or obvious).").[4]

---

472-73 (5th Cir. 2006) (holding that a federal court may impose a federal sentence to run consecutively to a state sentence not yet imposed). Jasso notes that he "accepts this holding as the law of the Circuit," but asserts that he seeks to preserve the matter for further review. One panel of this Court may not overrule the decision of a prior panel in the absence of en banc consideration or a superseding Supreme Court decision. United States v. Lipscomb, 299 F.3d 303, 313 n.34 (5th Cir. 2002). Accordingly, the appellant's argument is foreclosed by this Court's holding in Brown, and this memo will not address the appellant's argument in this regard any further.

[4] We do not address the fourth prong of the plain error review here since all three of the first prongs are not met in this instance. See United States v. Ellis, 564 F.3d 370, 377 (5th Cir. 2009) ("If all three conditions are met an appellate court may then exercise its discretion to

Our decision to affirm the defendant-appellant's sentence hinges on our analysis under the second prong of the plain error analysis.[5] That is, we conclude that the two contested criminal history points were assigned in error. This error, however, was neither clear nor obvious, and, as we will also discuss below, it did not affect the defendant-appellant's substantial rights. Accordingly, we respectfully observe that because "[t]he doctrine of plain error serves powerful institutional interests, including securing the role of the United States District Court as the court of first instance, as opposed to a body charged to make recommendations to appellate courts" United States v. Ellis, 564 F.3d 370, 378 (5th Cir. 2009), we must affirm the district court in instances such as those presented in this case, where there is no clear error.

A.     The Error in the Criminal History Category Assessment

This case requires us to address the question of whether "term of imprisonment," as it appears in § 4A1.2(k), refers only to the portion of the term of imprisonment that was not suspended–or, whether it refers to the entirety of the term of imprisonment issued upon revocation, regardless of any subsequent suspension of that term. We conclude that "term of imprisonment," as it appears in § 4A1.2 as a whole, is synonymous with "sentence of imprisonment" and therefore "refers only to the portion that was

---

notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

[5] For a more thorough discussion highlighting the significance of the second prong of the plain error analysis, see Ellis, 564 F.3d at 378 ("This emphasis on the second prong of plain error analysis is particularly important given the development of this court's case law on the third and fourth prongs of the plain error test in the sentencing context, where the court has been generous with remand, often finding that errors leading to substantial increases in sentences, even those errors not raised until appeal and thus subject to plain error review, merited remand, although we are not convinced that the case law on this point is settled or as categorical as language in some cases might make it seem. To our eyes, the lack of any clear error here means that [the defendant-appellant's] sentence should stand.").

not suspended." § 4A1.2(b)(2).[6] We recognize that the Commission's supplanting of § 4A1.2(e)'s "sentence of imprisonment" with a different, un-defined term ("term of imprisonment") in § 4A1.2(k) could reasonably lead to the conclusion that the two terms share different meanings. Our review of § 4A1.2, however, leads us to conclude that attaching disparate meanings to these two terms results in irreconcilable inconsistencies in § 4A1.2 as a whole. As a result, we write to clarify this error.

Section 4A1.2(e) governs whether Jasso's prior conviction in Texas state court counts for current criminal history purposes. Under § 4A1.2(e)(1), "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." Under § 4A1.2(e)(2), "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." Under § 4A1.2(e)(3), however, "[a]ny prior sentence not within the time periods specified above is not counted." Thus, for a district court to properly assess criminal history points for a prior conviction pursuant to § 4A1.1, the prior conviction must fit into either of § 4A1.2(e)'s first two categories. United States v. Arviso-Mata, 442 F.3d 382, 385 (5th Cir. 2006) (holding that where a defendant's "conviction does not fall within the time periods specified in § 4A1.2(e)(1) or (2), it should not [b]e counted."). Jasso's 1995 state court sentence to felony probation, alone, cannot contribute any criminal history points since it was well-over the ten year limitation

---

[6] In pertinent part, § 4A1.2(b)(2) states as follows: "If a part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only t the portion that was not suspended." Consequently, our conclusion that "term of imprisonment" and "sentence of imprisonment" share the same meaning requires us to also conclude that "term of imprisonment" "refers only to the portion that was not suspended."

found in (e)(2) and because as a term of probation, it fails to meet the thirteen month minimum established in (e)(1).[7]

Thus, the only possible way his 1995 conviction could count for criminal history purposes would be if the "term of imprisonment" issued upon his revocation of probation affected the quantification of his "original term of imprisonment" in § 4A1.2(e), pursuant to § 4A1.2(k). Section 4A1.2(k) governs the implications of a probation violation— as it relates to the calculation of criminal history points. Arviso-Mata, 442 F.3d 382, 385 (5th Cir. 2006) ("Section 4A1.2(k)(2)(B) explains how the new term of imprisonment affects the counting of criminal history points under § 4A1.2(e)."); accord United States v. Arnold, 213 F.3d 894, 896 (5th Cir. 2000) ("That provision explicitly addresses the problem of revocation of parole.").

Specifically, § 4A1.2(k) states that: "[i]n the case of a prior revocation of probation, parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable." (emphasis added). This seemingly simplistic phraseology instructs district courts to add the term issued upon revocation to the original term of imprisonment. The government's position is that the original term (zero years) should be added to the term imposed upon revocation (ten years) for a resulting total of ten–placing Jasso's 1995 conviction well-within § 4A1.2(e)(1)'s thirteen month minimum. Such an interpretation of "term of imprisonment" as it appears in § 4A1.2(k) , however, offers only a cramped reading that does not comport with the term's appearance in § 4A1.2 as a whole.

---

[7] As noted above, for his assault conviction in Texas state court, Jasso was sentenced to a term of ten years of probation, which for criminal history purposes, amounts to a sentence of imprisonment of "zero" years. See, e.g., United States v. Arviso-Mata, 442 F.3d 382, 385 (5th Cir. 2006) (calculating a term of probation as "zero" years under § 4A1.2(e)).

The error in the district court's addition of the two contested criminal history points in the present case, however, is made evident when two terms, "sentence of imprisonment" and "term of imprisonment," found in sections (b), (e), (k) and the notes accompanying § 4A1.2, are read in accordance with the canon of statutory construction noscitur a sociis. "Under the familiar canon of statutory construction noscitur a sociis, 'a word is known by the company it keeps.'" In re Hickman, 260 F.3d 400, 403 (5th Cir. 2001). Our review of § 4A1.2 contained herein reveals that "sentence of imprisonment" and "term of imprisonment" keep quite close company. Given their undeniable close quarters, coupled with their interchangeable use, we conclude that "sentence of imprisonment" and "term of imprisonment" should be read synonymously. It then follows that the district court's assessment of the two additional criminal history points was in error, albeit it far from obvious.

A review of the Application Notes in the Sentencing Guidelines provides ample support for our interpretation. In Application Note No. 11, the Commission evinced its intent that pursuant to § 4A1.2(k), "[r]ather than count the original sentence and the resentence after revocation as separate sentences, the sentence given upon revocation should be added to the original sentence of imprisonment, if any, and the total should be counted as if it were one sentence." (emphasis added). Thus, the Commission refers to the original sentence as "the original term of imprisonment" in § 4A1.2(k)(1), yet in Application Note No. 11 exchanges "original term of imprisonment" for "original sentence of imprisonment." Given that Application Note No. 11 is the note designed to provide district courts with better insight to the true meaning of § 4A1.2(k), the note's replacement of "term of imprisonment" with

"sentence of imprisonment" leads us to conclude the two terms cannot have disparate meanings.[8]

Application Note No. 11 also explains that § 4A1.2(k) is designed to benefit the defendant by limiting the number of criminal history points that may be assigned to a single conviction (three), even if the defendant served multiple prison sentences on that conviction due to violations of his probation. That is, it does not seem that a disproportionately harsher punishment for having violated probation was the true intent of the Commission, for in Comment No. 11 following § 4A1.2(k), the Commission states that the purpose of § 4A1.2(k) is to ensure that "no more than three points will be assessed for a single conviction, even if probation or conditional release was subsequently revoked." If this Court were to conclude that § 4A1.2(k)(1)'s "original term of imprisonment" does not refer to the calculated "sentence of imprisonment" as found in § 4A1.2(e) and defined in § 4A1.2(b)— this Court would be interpreting § 4A1.2(k)(1) as requiring the sentencing court to add the original term of a sentence (without the benefit of subtracting any suspended portion of the original sentence pursuant to in § 4A1.2(b)(2)), to the new sentence issued upon revocation. That is, under such an interpretation, anytime a defendant violated probation on a prior conviction, the sentencing court would be required to consider portions of the defendant's original sentence that the sentencing court would not have otherwise considered. Such a conclusion would violate the Supreme Court's "rule of

_____

[8] Application Note No. 11 is not the only comment that substantiates our reading of the two terms as synonymous. In Application Note No. 2 following § 4A1.1, the Commission again uses the two terms interchangeably, stating that "[w]here a prior sentence of imprisonment resulted from a revocation of probation, parole, or a similar form of release, see § 4A1.2(k)." (emphasis added). Because § 4A1.2(k) itself refers only to "term of imprisonment" and does not contain the words "sentence of imprisonment," as referenced in the aforementioned Application Note to § 4A1.1, this interchangeable use presents strong evidence that the Commission considers the two terms to be synonymous.

lenity," a policy the Supreme Court has adopted in statutory construction. Bifulco v. United States, 447 U.S. 381, 387 (1980) ("This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.").[9]

For the aforementioned reasons, we hold that for purposes of calculating criminal history points under U.S.S.G. § 4A1.2, "term of imprisonment" shares the same meaning as "sentence of imprisonment." Because until now the error in assigning any other meaning to "term of imprisonment" has been anything but obvious, and because we review the district court's error under the plain error standard of review, we affirm the district court's sentencing of the defendant-appellant. Sentencing courts are now instructed that in calculating the term issued upon revocation pursuant to § 4A1.2(k), they are to include in their calculations "only . . . the portion [of any sentence issued upon revocation] that was not suspended." § 4A1.2(b)(2).

B.     The Defendant-Appellant's Substantial Rights

We also note that even if were to conclude that this error had been clear and obvious prior to our declaring it so, we would still refrain from reversing the district court's sentencing of Jasso since the error, in its specific application to Jasso's case, did not substantially affect his substantial rights. In inquiring whether the defendant-appellant's substantial rights have been

---

[9] A review of the law in other Circuits also supports this conclusion. The Second Circuit has stated that it interprets "§ 4A1.2(k)(1) and Application Note 11 to § 4A1.2(k) as requiring the district court to aggregate the period(s) that the defendant served in prison upon any partial revocation(s) of his probation with the period served upon any final revocation." United States v. Glidden, 77 F.3d 38, 40 (2nd Cir. 1996) (emphasis added). The Second Circuit's reference to "period served" (as opposed to "sentence given") indicates that the Second Circuit shares Jasso's interpretation that in calculating the total sentence pursuant to § 4A1.2(k), the sentencing court considers § 4A1.2(b)(2)'s definition as synonymous with the definition of "term of imprisonment," since the Court would only add the portion of the sentence "served in prison," and not the total sentence given upon revocation. See id.

affected, the "proper question here is whether the defendant can show a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." United States v. Villegas, 404 F.3d 355, 364 (5th Cir. 2005).

Jasso cannot satisfy this burden. Including the incorrectly assigned two criminal history points for his 1995 prior conviction, the district court assigned him five criminal history points in total. With an offense level of twenty-one, the district court found that the applicable advisory guidelines range was forty-six to fifty-seven months in prison. The district court then sentenced him to forty-six months. If this Court were to subtract the two criminal history points that the district assigned in error, that would put Jasso at a criminal history category II, with a corresponding advisory range of forty-one to fifty-one months in prison. His current sentence of forty-six months, therefore, falls squarely in the middle of his corrected sentence. [10]

---

[10] In cases where this Court has found plain error, the gap between the correct and erroneous sentences has been sufficient enough such that there was an apparent, reasonable probability that the defendant would have received a lesser sentence but for the district court's error. See, e.g., United States v. Munoz-Ortenza, 563 F.3d 112, 116 (5th Cir. 2009) ("There is little doubt also that the error affects [the defendant's] substantial rights: the range of imprisonment is forty-one to fifty-one months as determined with the enhancement and six to twelve months without it."); United States v. Gonzalez-Terrazas, 529 F.3d 293, 298-299 (5th Cir. 2008) ("With the erroneous enhancement, [the defendant] faced a guideline range of 57 to 71 months imprisonment. Without the enhancement, [the defendant] faced a guideline range of 24 to 30 months. This significant disparity in guideline ranges based on the erroneous enhancement is sufficient to establish that [the defendant's] substantial rights were affected."); United States v. Sanchez, 527 F.3d 463, 466 (5th Cir. 2008) (finding plain error where the erroneous sentence the defendant "received is more than twice that provided for in the guidelines range."); United States v. Dentler, 492 F.3d 306, 314 (5th Cir. 2007) (finding plain error where the district court's error "resulted in a sentencing range where the lowest possible sentence is 65 months higher than the top of the range [the defendant] should have received."); United States v. Brazell, 489 F.3d 666, 669 (5th Cir. 2007) (finding plain error where the erroneous calculation "resulted in a guidelines sentence of 21 months, but the relevant guideline range without the § 4A1.1 enhancement would have been 12-18 months."); United States v. Garza-Lopez, 410 F.3d 268, 275 (5th Cir. 2005) (finding plain error where the "sentencing range would have been at most thirty-three to forty-one months, far less than the seventy-seven month sentence [the defendant] received.").

Given this set of circumstances, we conclude that Jasso cannot demonstrate a "reasonable probability, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence."[11] Id.

For the aforementioned reasons, the judgment of the district court is AFFIRMED.

---

[11] Jasso asserts that he has demonstrated a "reasonable probability" because at the time of sentencing, the district court stated on record that "the defendant should be placed at the bottom of the advisory Guideline Range." Given that his current sentence sits squarely in the middle of the correct range, we cannot conclude–based on this statement alone–that the district court would likely sentence him to a lower sentence if it had correctly computed the criminal history points. The above quoted statement only demonstrates that the district court, when faced with a Guideline Range of forty-six to fifty-seven months, concluded it would be reasonable to place the defendant at the bottom of that range. Without any additional evidence, we cannot ascertain the likelihood that the district court would consider the lowest end of any range to be appropriate. As a result, Jasso has not demonstrated a "reasonable probability."